# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
# Urbana Division

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| v. ) | |
| ) | **Case No. 05-2106** |
| **EIGHTY THOUSAND NINE HUNDRED** ) | |
| **FORTY-ONE AND 05/100 DOLLARS** ) | |
| **($80,941.05) IN U.S. CURRENCY,** ) | |
| ) | |
| **Defendant.** ) | |

# REPORT AND RECOMMENDATION

In May 2005, Plaintiff United States of America filed a Verified Complaint for Forfeiture (#1) against Defendant Eighty Thousand Nine Hundred Forty-One and 05/100 Dollars ($80,941.05) in U.S. Currency. Federal jurisdiction is based on 28 U.S.C. §§ 1345 and 1355.

In December 2005, Bobbie Honorable, administrator of the estate of Regenald Campbell, filed a Motion To Suppress Evidence (#19). After reviewing the parties' pleadings and memoranda, this Court recommends, pursuant to its authority under 28 U.S.C. § 636(b)(1)(B), that Ms. Honorable's Motion To Suppress Evidence **(#19)** be **DENIED**.

## I.  Background
### A.  The Complaint

The following background is taken from the complaint. In December 2004, law enforcement officers responded to a burglar alarm at the residence of Alice Leonard. The officers observed that the garage door was damaged and appeared to have been forced inward. Leonard gave the officers permission to search the garage and house to determine if anyone was in the house or if anything had been stolen. Just inside the forced entry to the garage, the officers found $530 in U.S. currency. Leonard stated that this money did not belong to her.

When searching the attic, the officers found a locked safe. Leonard stated that the safe was not hers and she did not know how it got into her attic. She gave the officers permission to

open the safe. Upon opening the safe, the officers found several large bags containing $80,941.05, and several small bags containing a white powdery residue which tested positive for cocaine.

The officers searched the rest of the house and found a small amount of cannabis in the pocket of a man's coat hanging in the closet, two lockboxes containing documents belonging to Jeremiah Campbell, and car titles for two vehicles in the name of Bobbie Honorable, the mother of Jeremiah Campbell.

Leonard told the officers that Jeremiah Campbell was her boyfriend and he sometimes stayed at her residence; he had access to the house by way of the garage door code and it was possible that he placed the safe in the attic while Leonard was away from home. Leonard also stated that she suspected Jeremiah and his brothers sold drugs. Leonard said that Jeremiah had brought the car titles to Leonard because he needed someplace to keep them.

Jeremiah Campbell is a known drug dealer with several drug charges and convictions. Jeremiah's twin brother, Jermaine Campbell, and another brother, James Campbell, also have criminal histories relating to drugs and firearm possession. Another brother, Regenald Campbell, was known for dealing drugs and was a homicide victim in May 2004. The complaint alleges that, based on this history, probable cause exists to believe that the $80,941.05 is drug money belonging to Jeremiah Campbell.

### B. The Motion To Suppress

The following information is based on the motion to suppress. Bobbie Honorable, the administrator of Regenald Campbell's estate, is the movant who filed the motion to suppress. The motion alleges that Macon County Circuit Court appointed Ms. Honorable administrator of her son Regenald's estate in March 2005. Regenald had two children, Ryana and Emonie, who are his only heirs. At the time of Regenald's death, he owned the safe and its contents.

In December 2004, Alice Leonard called the police because her home had been broken into. The police officers found the locked safe in the attic and asked Leonard if the safe was hers. She told them it was not hers and she did not know how it got into her attic.

Along with the motion, Ms. Honorable filed affidavits from Alicia Leonard, Bobbie Honorable, and Jeremiah Campbell. In her affidavit, Ms. Leonard declared that she gave the officers permission to search her home to see if any person was inside the house. That permission was limited to a search of the residence for occupants. She told the officers that she did not know that the safe was in the attic and she did not authorize the officers to search or open the safe. After the officers searched the house and opened the safe, Ms. Leonard signed a permission slip to search the house.

Bobbie Honorable declared in her affidavit that she is the mother of Regenald Campbell who died in May 2004, leaving two minor children. She is also the administrator of Regenald's estate, appointed to represent the estate (Case No. 5-P-48). She further declared that the safe at issue and its contents belonged to Regenald. She did not give permission to search or open the safe or to seize its contents.

Jeremiah Campbell declared in his affidavit that, prior to his death, Regenald told him that he kept his valuables in a locked safe in his possession and in the possession of Tiffany Patterson (the mother of one of Regenald's children) to be turned over to Jeremiah for the benefit of Regenald's children if something ever happened to Regenald. When Regenald died, Tiffany asked Jeremiah to pick up Regenald's property for delivery to Regenald's heirs. Jeremiah received the safe and stored it in Ms. Leonard's attic, where he resided. He did not inform Ms. Leonard that he had placed it in the attic. At the time he put the safe in the attic, no one had been named to administer the estate.

The motion alleges that the police officers seized the currency "in violation of the Fourth Amendment rights possessed by the heirs of Regenald" (#19, ¶ 11), and the currency was taken as a result of the illegal search and seizure and should be suppressed from evidence in this case.

## II.  Standard of Review

Although this case comes before the Court on a motion to suppress, Plaintiff has raised issues of standing, which the Court must address before the merits of the motion can be considered.  One who asserts a Fourth Amendment violation bears the burden of establishing his or her standing to do so.  *See United States v. Mendoza*, 438 F.3d 792, 795 (7th Cir. 2006) ("A defendant who objects to the search of a particular area bears the burden of proving a legitimate expectation of privacy in the area searched."), citing *Rawlings v. Kentucky*, 448 U.S. 98, 104 (1980).

## III.  Analysis

Ms. Honorable argues that the Court should suppress any evidence related to Defendant currency because the "currency was seized in violation of the Fourth Amendment rights possessed by the heirs of Regenald D. Campbell."  (#19, ¶ 11.)  She contends that the search of the safe was unauthorized because Ms. Leonard never gave the officers permission to open or search the safe.  Furthermore, even if Ms. Leonard had given permission, she did not have authority to authorize the search.

Plaintiff responds briefly that the Court should deny the motion because Ms. Honorable "as Administrator of her deceased son's estate and on behalf of his minor children" (#22, p. 10) has no standing to assert a Fourth Amendment violation.  Plaintiff then addresses whether Regenald "or anyone acting on his behalf" (#22, p. 11) had a reasonable expectation of privacy in the safe and its contents.  Plaintiff appears to assume that Ms. Honorable filed the motion in two capacities:  (1) as administrator of Regenald's estate, and (2) acting on behalf of Regenald's heirs.  Therefore, the Court will consider the issue of standing as it applies to (1) Regenald's heirs, and (2) Ms. Honorable, as administrator of Regenald's estate.  Furthermore, even though Plaintiff discusses the privacy interests of "anyone acting on his [(Regenald's)] behalf," the Court will address *only* the standing of Regenald's heirs and Regenald's administrator.

Although Plaintiff presents this issue as a question of standing, Plaintiff's discussion recognizes that the United States Supreme Court has rejected the traditional concept of

"standing" as applied to a claim of a Fourth Amendment violation.  *See United States v. Smith*, 263 F.3d 571, 581-82 (6th Cir. 2001), citing *Rakas v. Illinois,* 439 U.S. 128, 139-40 (1978), and *United States v. Sanchez*, 943 F.2d 110, 113 n.1 (1st Cir. 1991).  The Supreme Court has dispensed with standing as a "discrete analytic element apart from the merits" in Fourth Amendment cases, instead requiring a defendant to establish a legitimate expectation of privacy as a prerequisite to challenging allegedly unlawful police conduct.  *Smith*, 263 F.3d at 582, quoting *Sanchez,* 943 F. 2d at 113 n.1.  In the present case, we use the word "standing" to refer to this threshold substantive determination.

Thus, standing is now a matter of substantive Fourth Amendment law, framed in terms of reasonable or legitimate expectation of privacy.  *Sanchez*, 943 F.2d at 113 n.1.  A reasonable expectation of privacy includes two elements:  (1) whether the individual has "exhibited an actual (subjective) expectation of privacy," and (2) whether the individual's subjective expectation of privacy is one that society recognizes as reasonable.  *Smith v. Maryland,* 442 U.S. 735, 740 (1979), citing *Katz v. United States*, 389 U.S. 247, 361 (1967) (Harlan J., concurring).  Moreover, Fourth Amendment rights are personal and may not be asserted vicariously.  *Rakas*, 439 U.S. at 130-31.  They can only be asserted by one whose Fourth Amendment rights have been violated.  *Alderman v. United States,* 394 U.S. 165, 171-72 (1969) ("[S]uppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence.").

We first consider the heirs' standing.

Ms. Honorable states that "Regenald, had he not been killed, would have standing to dispute the Government's action."  (#20, p. 5.)  She then imputes Regenald's purported standing to his heirs, stating that the currency was seized "in violation of the Fourth Amendment rights possessed by Regenald D. Campbell *and, thus, his heirs*."  (#22, p. 2 (emphasis added).)  The Court understands this statement to mean that Ms. Honorable is contending that the heirs, in a sense, "inherited" their Fourth Amendment rights from Regenald.

As an initial matter, after death, one is no longer a "person" within the meaning of 42 U.S.C. § 1983 and has no constitutional rights of which he may be deprived. *Whitehurst v. Wright*, 592 F.2d 834, 840 (5th Cir. 1979) ("After death, one is no longer a person within our constitutional and statutory framework, and has no rights of which he may be deprived."); *Guyton v. Phillips*, 606 F.2d 248, 250 (9th Cir. 1979) ("We find that the Civil Rights Act, 42 U.S.C. §§ 1983 and 1985, does not provide a cause of action on behalf of a deceased based upon alleged violation of the deceased's civil rights which occurred after his death."); *Love v. Bolinger*, 927 F. Supp. 1131, 1136 (S.D. Ind. 1996) ("The alleged cover-up . . . took place after Joseph Love was killed, and thus could not have violated any of Joseph Love's constitutional rights."). Although this is not a claim brought pursuant to Section 1983, the Court concludes that the same reasoning applies in this situation – after death, one has no constitutional rights of which he may be deprived.

Regenald died in May 2004, therefore, he had no Fourth Amendment rights in December 2004 when the officers searched the safe. Because Regenald had no Fourth Amendment rights, his heirs cannot derive any Fourth Amendment rights from him.

In addition, as noted above, Fourth Amendment rights are personal and cannot be asserted vicariously. *See Rakas*, 439 U.S. at 130-31. Thus, the heirs cannot assert that they have any Fourth Amendment rights in the safe and its contents based on the fact that Regenald may have had Fourth Amendment rights. Thus, Regenald's heirs had no "derivative" Fourth Amendment rights as to the safe and its contents.

The heirs have not asserted that they had any direct (i.e., personal rather than derivative) Fourth Amendment rights nor have they established that they had any subjective expectation of privacy with respect to the safe and its contents. In addition, Ms. Honorable, acting as administrator, has not asserted that she had any Fourth Amendment rights to the safe and its contents, nor has she exhibited an actual, subjective expectation of privacy regarding the safe and its contents.

The person who objects to a search bears the burden of demonstrating to the Court that he or she had a legitimate expectation of privacy. *Mendoza*, 438 F.3d at 795; *Sanchez*, 943 F.2d at 112-13 (stating that one would be entitled to challenge the legality of the search of the safe only if he or she reasonably anticipated that the safe and its contents would be kept private), citing *Rakas,* 439 U.S. at 130-31 n.1. Here, neither Regenald's heirs nor the administrator has shown that they had any Fourth Amendment rights or any legitimate expectation of privacy as to the safe and its contents; thus, they have not satisfied the threshold requirement for seeking to suppress the evidence based on the Fourth Amendment. As a result, they may not assert a Fourth Amendment violation with respect to the safe and its contents, and the Court recommends denying the motion to suppress.

Ms. Honorable also contends that a claim for "detention or conversion of personal property" survives the death of the property owner. *See* Illinois Survival Act, 755 ILCS 5/27-6. However, the Survival Act does not create a statutory cause of action. It simply allows a decedent's personal representative to pursue a claim that existed prior to decedent's death. *See McDaniel v. Johns-Manville Sales Corp.*, 511 F.Supp. 1241, 1243 (N.D. Ill. 1981) (stating that the Survival Act "allows a representative of the decedent to maintain those statutory or common law actions which had already accrued to the decedent before he died"). Here, the events that gave rise to the purported Fourth Amendment claim occurred after Regenald's death. Therefore, the Survival Act does not constitute a basis for Ms. Honorable to assert a Fourth Amendment violation on behalf of Regenald or his heirs.

In addition to the above arguments, Ms. Honorable relies on *United States v. Miscellaneous Jewelry*, 667 F. Supp. 232 (D. Md. 1987). In that case, the district court held that the personal representative of the estate of the deceased owner had standing to contest the forfeiture of the decedent's property and also held that the alleged heirs of the decedent lacked standing to contest the forfeiture. Regarding the personal representative's standing, the court stated that a claimant must show that he has standing to seek the return of forfeited property. It then stated as follows: "It is well established that a party seeking to challenge a forfeiture of

7

property must first demonstrate an ownership or possessory interest in the seized property in order to have standing to contest the forfeiture." *Id.* at 235-36.

*Miscellaneous Jewelry* does not support the motion's Fourth Amendment argument because it addresses the issue of standing to contest a forfeiture on other grounds, rather than standing to assert a Fourth Amendment violation. The Court's recommendation to deny the motion to suppress for lack of standing to assert a Fourth Amendment violation does not necessarily mean that Ms. Honorable has no basis to contest the forfeiture.

### IV.  Summary

For the reasons stated above, this Court recommends that Ms. Honorable's Motion To Suppress Evidence **(#19)** be **DENIED**. The parties are advised that any objection to this recommendation must be filed in writing with the clerk within ten (10) working days after being served with a copy of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).

ENTER this 18th day of April, 2006.

s/ DAVID G. BERNTHAL<br>
U.S. MAGISTRATE JUDGE